IN RE APPLICATION OF NWANKWO.

[Cite as *In re Application of Nwankwo,*
121 Ohio St.3d 72, 2009-Ohio-260.]

(No. 2008–1683—Submitted September 19, 2008—Decided January 29, 2009.)

_____

**Per Curiam.**

{¶ 1} This matter arises upon the filing of a report by the Board of Commissioners on Character and Fitness regarding Joy Uzoamaka Nwankwo's application to sit for the Ohio bar exam. For the following reasons, we adopt the recommendation of the board that Nwankwo's application be rejected but that she be allowed to reapply to take the July 2009 Ohio bar exam.

### Relevant Background

{¶ 2} In July 2007, Nwankwo sat for the Ohio bar exam. This was the third time Nwankwo was taking the test.

{¶ 3} One portion of the bar exam consists of six sets of two essay questions, and for each set, the applicants are allotted a specific amount of time in which to answer. Two weeks before the exam, applicants receive a set of written instructions regarding the test. Included among those instructions is a section labeled "Violation of Exam Instructions." Relevant to our discussion today is the instruction that provides, "An applicant may be subject to disqualification or other sanctions if he or she * * * continues working on an exam segment for any period of time after time to stop has been called * * *." In addition, applicants are advised orally at the beginning of the exam and at the end of each testing segment that when time is up, they are to stop writing and are to put their writing instruments down. These procedures were similar to those in effect on the prior two occasions that Nwankwo took the exam.

{¶ 4} On the last day of testing, Lee Ann Ward, the Director of the Office of Bar Admissions of the Supreme Court of Ohio, who was responsible for administering the July 2007 bar exam, was told by proctor Anthony Triplet that Nwankwo had written down answers after time had been called. Triplet told Ward that another applicant had pointed out to him that Nwankwo was still writing, even though time had been called. Triplet had then reminded Nwankwo that time had been called and that she was to stop writing. Although Nwankwo had acknowledged Triplet, she continued to write for a few more moments after this warning.

{¶ 5} Ward then asked Rosey Smith, a Bar Admissions Coordinator, to observe Nwankwo during the next set of questions, which were the final questions of the exam. Smith did so and observed Nwankwo once more writing after time was called.

{¶ 6} Smith ordered Nwankwo to stop writing, but just as Nwankwo had done when Triplett told her to stop, Nwankwo continued to write. Smith again ordered Nwankwo to stop, and this time Nwankwo did put her pen down.

{¶ 7} At this point, Smith told Nwankwo to stay behind after the other applicants were dismissed because Ward would want to speak with her. Nwankwo pleaded with Smith to let her leave and not report her.

{¶ 8} Smith then brought Nwankwo to Ward, who explained to Nwankwo that it was alleged that she had continued to write answers after time had been called. Ward further explained that Nwankwo could respond to the allegations at that time or she could leave and send in a response. Nwankwo chose to write a statement before leaving.

{¶ 9} While Nwankwo was composing her response, Smith informed Ward that Nwankwo's tablemate had seen Nwankwo writing after time was called on each day of the exam. Upon Smith's request, the tablemate completed an irregularity report that detailed those accusations.

{¶ 10} After failing to address Smith's allegations in her response and learning of her tablemate's accusations, Nwankwo was given an opportunity to take back her first response and provide Ward with a new statement. In the second statement, Nwankwo admitted to writing after time had been called on at least two sets of questions.

{¶ 11} Ward then compiled a report of what had transpired[1] and forwarded it to the Board of Bar Examiners. After reviewing the submitted materials, the Board of Bar Examiners determined that Nwankwo had violated the exam rules by continuing to write answers after time had been called and referred the matter to the Board of Commissioners on Character and Fitness.

{¶ 12} The board conducted a panel hearing on March 14, 2008. Nwankwo testified that she had not heard Ward's instructions at the beginning of the exam, because she was using the restroom, but she also testified that she had not written over the allowed time period during her previous attempts at passing the bar exam. Nevertheless, Nwankwo admitted that she knew she was violating the rules when she continued to write after being ordered to stop.

{¶ 13} Nwankwo's explanation for her actions was twofold. First, she stated that she had been so invested in passing the bar exam on that occasion—having taken six months' leave from her employment to study and having spent money for study materials—that she was desperate to write down everything she could remember. Second, Nwankwo claimed that in Nigeria, where she already is

---

1. Ward learned a few days later from yet another proctor that Nwankwo had been "messing around" with her papers after time had been called on the first two days of testing.

licensed to practice law, infractions similar to those in question in this matter are not taken seriously.

{¶ 14} Following the hearing, the panel determined that Nwankwo violated the testing rules by writing past the allotted time on two sets of essay questions.[2] The panel also puzzled over why Nwankwo would choose to write after time was called on the final set of questions in light of the fact that Triplet had reprimanded her for doing so on the previous set of questions. Moreover, the panel called into question Nwankwo's character due to her request that Smith not report her and her cavalier attitude toward the exam rules. In conclusion, the panel found that even taking into account that there may be differences between Nigerian and Ohio bar exam protocol, Nwankwo had not demonstrated the requisite character and fitness for the bar, but it recommended that she be allowed to reapply to take the July 2009 bar exam.

{¶ 15} Afterwards, a unanimous board adopted the panel's report and submitted its recommendation to us.

### Disposition

{¶ 16} An applicant to the Ohio bar has the burden to establish by clear and convincing evidence that she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must reflect conduct that "justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). It necessarily follows that "[a] record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Id. Furthermore, an applicant should satisfy the essential eligibility requirements for the practice of law, which include acting with an exceptional degree of honesty, integrity, and trustworthiness in her professional obligations; following the laws and the Rules of Professional Conduct; and complying with deadlines and time constraints. Gov.Bar R. I(11)(D)(3); see also Supreme Court of Ohio, Definitions of Essential Eligibility Requirements for the Practice of Law, Requirement Nos. 4, 5, and 9, http://www.sconet.state.oh.us/admissions/pdf/ESSENTIAL_ ELIGIBILITY_REQUIREMENTS.pdf.

{¶ 17} Applying these standards to the case at hand, Nwankwo has not fulfilled her burden of establishing that she possesses the requisite attributes to qualify for admission to the practice of law. At least twice during the 2007 exam, she consciously disregarded instructions to stop writing. Her unwillingness to com-

---

2. The panel also noted that Nwankwo may have written after the permitted time throughout the exam, given the other allegations and her belief that doing so was not a serious violation.

ply with these orders calls into question her integrity and trustworthiness, her ability to conduct herself within the Rules of Professional Conduct, and her capacity to appreciate the importance of meeting the numerous filing deadlines and time constraints established by the Civil Rules and Ohio's courts.

{¶ 18} Moreover, Nwankwo exercised poor judgment in her initial reaction to the situation. First, she asked Smith not to report her violation. Second, her first written response failed to mention the allegations that Smith had brought forward. As mentioned previously, Nwankwo knew that she had violated the exam rules by continuing to write after time had been called, yet she tried to evade culpability for her wrongdoing until Ward confronted her with the fact that multiple witnesses had seen her violating the rules.

{¶ 19} Based on the record before us, we adopt the board's recommendation that Nwankwo be permitted to reapply to take the July 2009 Ohio bar examination.[3]

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

O'DONNELL and LANZINGER, JJ., concur in part but would allow respondent to apply for the July 2010 bar examination.

———————

James D. Beaton, for relator, Warren County Bar Association.

Kathy Ruark Blevins, for applicant.

————————————————

IN RE J.F.

[Cite as *In re J.F.,* 121 Ohio St.3d 76, 2009-Ohio-318.]

———————

3. On October 20, 2008, Nwankwo moved the court to seal the record in this case pursuant to Gov.Bar R. 12(E). We deny that motion.